Good morning, Your Honors. May it please the Court, my name is Jonathan Byrne and I am here on behalf of Kofi Agyekum. This is a case that began as an investigation into the illicit distribution of prescription pain pills. When it came time to return an indictment, the government returned a series of lengthy superseding indictments that, although they were false, mostly were based on structuring offenses. When it came time to enter a guilty plea, the plea that Mr. Agyekum made was to two counts of structuring that occurred on three particular dates. Nonetheless, when sentencing arrived, the focus of the case changed again and it became all about the drug distribution. The main issue here today is whether two of the sentencing enhancements that are related only to the drug activity, not the structuring activity, were correctly applied because they constitute relevant conduct of the structuring. Do I understand there's a count for conspiracy to distribute drugs? There was in the indictment, Your Honor, yes. And if that conduct within that conspiracy count is relevant conduct, then the judge was okay, right? If that would have been one of the counts to which he pleaded guilty, yes, Your Honor, I think that probably would have been better. So the whole issue in this case is whether the drug conspiracy conduct is relevant to, under the guidelines, is relevant to the structuring? Yes, Your Honor. Okay. And essentially what that comes down to is 1B1.3a lays out about three different ways that something can be relevant conduct. The only one that the government relied on in its brief was one point. Now, let's not just stick with that one. I understand that. That's the grouping and a grouping is sort of a complex notion. Indeed, Your Honor. You eventually get maybe to the common scheme notion. But the district judge basically said that it was relevant. He just made the sort of the A1 type of conclusion just summarily. And A1 simply says all acts committed during the commission of the offense of conviction. And so the question is were the acts of the conspiracy being committed during the conviction? It's sort of an intuitive thing. I suppose during this means temporal and may mean some nexus too. Some circuit has sort of put more weight on the, had to put more weight on the during and say it's more than just temporal. But in this case, the cash generated from the pharmacy and the need to hide the cash and collecting cash only from the clients and then explaining to the banks that it comes from the pharmacy and this type of thing. It looks like that during is might be satisfied. Well, Your Honor, and you hit on what I think is the key to this, which is the scope of offensive conviction. Because I think the offense of conviction was structuring on two dates, two discrete dates, three days, but two discrete counts, yes, Your Honor. Yeah, well, that's right. But it's on two dates. One of them was two on the same day, right? I believe it was two separate days on the second count, but they were. June 5th and 6th? Right. Okay, June 5th and 6th and April 25th. Yes, Your Honor. Yeah, okay. So you have discrete dates, but the question is during the commission of those offenses, were acts being committed in connection with drug trafficking and the allegations are that the conspiracy went from August 2013 to July 2014. And not only that, he was right in the thick of his drug activity at that point. I mean, cash was piling up. He had it in the pharmacy. He had it in the lockbox or whatever it is he had in the banks. He's moving it around. He's explaining. This was a cash operation. Yes, Your Honor. Yeah. And so the question is, can you argue or how do you argue that the drug conduct was not going on during the time of those two or three discrete structuring offenses? I don't think it's just whether the conduct was going on at the same time. The guideline says acts committed during commission of the offensive conviction. Acts committed during. During, yes. And during, I'm going to give you a lot of benefit because I agree with you, during probably doesn't mean just temporal. It probably means some nexus or linkage because if you committed securities fraud at the same time you were doing this structuring based on drug proceeds, it may not be relevant conduct. But I think some other circuits have said that during carries a little more requirement than just temporal. But that's my point to you about the linkage between the drug activity and the two structuring or three structuring offenses. And I think the problem with the way he was convicted and then sentenced in this case is that the structuring offense, it literally occurs when he gets, when he puts the money in the bank. There's nothing that occurs before, there's nothing that occurs after. So the actual drug activity was not ongoing while he was at the bank putting the money in. Well, it's alleged to have been. It's alleged to have been going on continuously from August 2013 to July 2014. Well, that's correct, Your Honor. But I don't think there's anything in the record that specifically ties these dates to particular activity. And we do have testimony at the sensing hearing from... And it was drug proceeds, wasn't it? The structuring was tied to unlawful conduct. That is correct, Your Honor. I mean, you're not going to be at the tellers, at the bank, putting the money in the bank at the same time somebody behind you is selling the drugs in the bank. I mean, the question is, what is contemporaneous? But the conspiracy is ongoing. And not only was it ongoing, it was highly active at that time. He had lots of cash. And it was generated by drugs in his pharmacy. And he is trying to find a way to cover it up and disguise it and launder it so that he could use the money effectively. Well, Your Honor, I think part of that issue, when you look at 1B.1.3.A.1.A. or, yes, A, is it talks about doing these things in commission of the offense either in preparation for or to try and avoid detection. Or during. You leave out the during. It's all part of that same... It is. It is, Your Honor. Yes. But I think if you read during to mean any time during the course of the unlawful activity, it essentially reads out the rest of that definition. No. Preparation for is if the conduct was before the commission of the crime of offense. Correct. That would be, or subsequent, but the applicable one would be, they're all in the disjunctive, would be the during. Because the drug offenses were ongoing. And that's true, Your Honor. The offenses of conviction took place during the time the conspiracy was alleged to have happened and that the court found that it was occurring. Our argument is that you need something more than that, particularly when you look at the nature of these enhancements. Because the enhancements involve the position of trust and involve the management role, which clearly don't have anything to do with the structure. Is it clear that the proceeds that were sought to be concealed were derived essentially from the selling of drugs, illegal drugs? Well, Your Honor, the enhancement for the funds having been sourced from unlawful activity, we are not challenging that. So for our purpose, it is established. I'm afraid so, Your Honor. I mean, money, after all, is fungible. Well, I'm simply going to judge Nehemiah's questions in terms of the connectivity between these activities and the drug distribution. If you're dealing with drugs that were illegally sold, and proceeds come from those drugs, and then you seek to structure those payments to the banks such that you don't have to be, I assume, revealed as to first having funds in excess of that amount and secondly, perhaps from a tax perspective, but that's another question. I think Judge Nehemiah may be on to something in terms of saying there's some connectivity here enough to determine if there are enhancements. Well, and I think, like I said, I think we're stuck with the finding that the money came from unlawful conduct, or at least that there is an amount of money that came from unlawful conduct and during this time he structured it. Well, if you're stuck with that, why don't you start with the relevancy of it to this structuring? Because, Your Honor, the actual structuring, the enhancements that… It's a type of act, but you cannot have done one without the other. It's something that occurred as a result of the illegal activity. Well, this particular offense of structuring is perhaps tied to the unlawful conduct, but in the categorical sense, the offense of structuring would not. That's why there's a separate enhancement for the unlawful activity. And our argument is that there is enough of a disconnect between… What's the disconnect? I couldn't find any disconnect. I thought that it's part of the same… The guidelines want to get all of the conduct to be considered when sentencing, not necessarily when charged. What's charged? And it seems to me that the structuring was an integral part of this whole operation. Well, Your Honor, I think if he had been convicted of a drug conspiracy… I understand your point. He was convicted of three discrete transactions that occurred, that began and ended on those dates. Three dates. Yes. I understand that point, but that's exactly what the sentencing guidelines wants to address. They say you're not responsible just for the conduct on those three dates. You're responsible in sentencing for the conduct that's relevant to the conduct on those three dates. But there has to be some limitation on that, Your Honor. Sure. And that's what we're trying to explore. Yeah. Apparently. You know, even with your argument here dealing with whether this is relevant, it seems to me your time is running out. The more interesting issue in this case deals with the imposition of the two enhancements, less so with the leader of the criminal activity from my perspective. You could probably persuade me if you tried. But on the abuse of the position of trust, I was in your shoes. I would have argued that by now. Well, Your Honor, it's bound up with the relevant conduct issue in that… There's a serious distinction between those two things there and how one informs the other. And the question on the abuse of trust, I think there's something that could be argued. Well, Your Honor, the district court's factual conclusions we've taken as read for this proceeding. But I think in terms of how it ties into the structuring, which is why it goes all back, it's all tied up together, it is a question of what position he abused in order to engage in… Well, Your Honor, that's how we've argued it. If Your Honor wants to… No, I'm not arguing your case. I'm just saying that… He was a good lawyer, I can tell you. Leader of criminal activity requires certain facts, and in abuse of trust require other facts. And you are, it seems to me, conceding both of those. We don't have to go into the basis for establishing either one if you find that there's this overall relevancy of just the activity one. If you don't have to actually show there's some trust or producer-type thing set up on it, are you telling me that's okay? I'm not arguing your case. I'm just asking. Well, Your Honor, I made the decision when we were putting together what issues to raise, and I didn't think that was something that had the head legs, as they say. I may be incorrect. I'm just going from the ten of the questions that's come from the bench and wondering the nature of that decision. The decision to impose the position of trust. Just tell me, who is the person that the defendant held a position of trust with? Who was the victim in this case? In terms of the relevant conduct, it would be his ability to order. Who's the victim? In the drug conspiracy, it's society, as it's usually characterized in pre-sentence. Someone like that got a position of trust. Well, the basis the district court found was that he was in a position to order medication in bulk because he was the manager of the pharmacy. But I don't recall the district court identifying any victim. No, I don't. With regard to mishandling. I don't think. You're not arguing. That's my point. I don't get it. Maybe I'm just making this up. I'm just wondering. It seems like to me that's a far more interesting discussion than what we're dealing with. You're trying to say that this is not relevant conduct. Proceeds that come from illegal drug activities are being structured. It's not liberating in general. I think that's a difficult argument. The question of whether or not the district court identified a victim, because you've got to have something there for trust. But it's an enhancement, and it's a significant enhancement, because you get two enhancements. This is one of two. One of four, actually. One of the two. That's a good idea. Two levels. Anyway, I'll leave it. If there are any more questions, I'll wait in my rebuttal. Thank you very much. Thank you. Ms. Coleman? Thank you. Would you start by telling me who is the victim with regard to this abuse of trust? I think you argued it was the IRS, didn't you? Well, Your Honor, we had several theories on that. But I believe the court finally found that he applied the abuse of trust based upon the defendant's ability to order the medication as a pharmacist. So there would be two victims in the United States position. One is his supplier, because he owes a duty to that supplier to only order medication that he is lawfully selling. And when he abused that trust that he owes as a pharmacist and as the manager of the pharmacy to order those medications and was then distributing them illegally, he abused that trust position that a pharmacy has, is what the district court said. It was a pre-sentencing report I was referring to, and that's the one where you said the IRS was the victim. Don't mind the IRS being a victim very often, do we? I'm sorry. I don't recall that off the top of my head. But we argued at the sentencing hearing that he deserved the enhancement based upon his abuse and his ability to order the medication. And then he would also have just society as a whole and his role as a pharmacist to order prescriptions and dispense prescriptions in the way a pharmacy is supposed to. And he abused that trust when he was ordering them in bulk amounts in order to have them stockpiled to distribute illegally through his distribution conspiracy. Did the defendant have any special access or duties with regard to his conduct? He had the ability to order those medications. He actually – But he got it with his wife's password and information, not his own. He was the – the district court found that he ran the pharmacy. But he got it with his wife's password and information. It wasn't his own. Correct. He logged on through her log-on credentials. Did the evidence show he functioned essentially as a CEO of the operation? The evidence indicated that he is actually listed as the president of what is called KPAT, which was the name that the pharmacy was registered with. He was the listed president of that. I mean, the adjustment comes from a position of private trust or skill that enabled the commission – facilitated the commission or the concealment of the crime. And it seemed to me that I thought it rested on the fact that he was in charge of the whole operation and made it work the way he wanted it to work, which violates the position of trust. Correct. The evidence was that he – That's my question is the trust for whom? I mean, he's not a pharmacist. He's not in – he doesn't have a license. His wife does. She has the password, the information. It's all easily discoverable by the wife. Now, she can say she was coerced or whatever. But the trust for the public is with the person they've licensed it with, not someone who comes in and sort of takes over. That's a whole different activity. It's illegal, but the public's trust is with the wife. He is the pharmacy manager. The evidence – You got that point, but the public doesn't look at it that way. That's something he's established with his wife. The public's perspective in terms of pharmacy and distribution of drugs is through the pharmacist. If someone comes in there and decides to take over and use – the wife allows it to be used or whatever, is that an abuse of the trust with the public or with the wife? And that's a whole different ballgame. That's why I asked who's the victim. Well, the victim, as the district court found, I believe, would be the supplier because the district court found that he abused his position as the pharmacy and the pharmacy manager to order bulk prescriptions and that he knew that he was going to distribute illegally. Who is the supplier? I believe that it was – I don't want to tell the court wrong. Mylon Pharmaceutical, but that's in the past. We're talking about the pharmacist because the supplier is not going to give him drugs. They're not going to do anything to him. You have to have a pharmacist to get these drugs, and to get the drugs, he used the password information from the wife, which was easily discoverable by the wife, whether she did it or not. But I believe as the pharmacy manager, he was able to order the drugs. With the wife's pharmacy license. Just being a pharmacy manager doesn't allow you to order drugs. You've got to have somebody who's a pharmacist to do it. Was there testimony in the record that people looked upon him as the pharmacist? Were people, in other words, going back in the records or looking at who had the license, or do we not know? He was licensed as a pharmacist intern with the state. He actually had gone to pharmacy school. Right, we know the record. So I'm not sure I understand the court's question. In other words, was he holding himself out as a pharmacist, and that's how he got the drug company to fill the prescription, or is there any testimony about that one way or the other? He was holding himself out to the public as a pharmacist. He referred to himself as Dr. Aguigam, and he was the one who handled all of the business for the pharmacy. And he distributed a lot of drugs without prescription, didn't he? He distributed a substantial amount of drugs without a prescription, and there's abundant testimony about that. Are you saying that the supplier would give him drugs because he was holding himself out to be a pharmacist when, in fact, he was not?  I don't believe there's any evidence of that in the record. I didn't make sure either. That's my whole point in terms of the trust aspect of it. I think your answer went to the other end. However the drugs came to the drug store, your representation to us is that the evidence was that he held himself out to customers of all sorts, that he was a pharmacist, and that he did have the ability to prescribe or give or sell or whatever these drugs. Is that right? Correct, Your Honor. Was there a charge to that effect? I'm sorry. Was he charged with faking to be a pharmacist or what? No, he was not. I don't think that was the case at all. He's using his wife's password and information to do this. She says it's overwhelming to him and he's doing all this, but he's not a pharmacist. And there's no allegation, at least in terms of the complaints, that he ever said he was a pharmacist and used it personally to do it. That is correct. The evidence is that he told his wife. There's just one enhancement here, but I'm just locked in on it because I know the other questions in terms of the relevancy. I haven't heard anything going on there. I just think this is a far more interesting thing to discuss. We could spend some time talking about the common scheme and all that other stuff here, but unless we've got something coming up, I think this is more interesting. That's my perspective. I don't know. I believe that the district court found that he had abused his management and his access as a pharmacy and applied the enhancement based on that finding, Your Honor. All right. We don't have any other questions. All right. Thank you, Ms. Goldman. Ms. Dunn. With my rebuttal, Your Honors, I just wanted to briefly touch on the other issue, which is in our brief, which involves forfeiture. That is the situation where Mr. Yeakam agreed in this plea agreement, there are about three pages worth of provisions regarding forfeiture, both factual stipulations and waivers of various procedural things that he could have used if he was trying to contest this forfeiture. The plea hearing initially had to come to a halt because when the district court was going through the plea agreement, Mr. Yeakam said, I don't agree to this. I've never agreed to this. Rather than dive into the provisions of it and see if he understood all that, the district court adjourned the hearing and told counsel to speak to his client. When the plea hearing resumed about a month later, Mr. Yeakam still was insisting that he did not really want to do this, but he felt he was being forced to, that he didn't have any choice. And, again, the district court did not. I explained, well, he didn't have any choice to because he said he'd be serving a longer time in jail and he wanted to see his family. And so he felt compelled to accept the deal, which was less than he would have gotten had he gone to trial. He did, Your Honor. And at that point, the district court should have inquired. But that's a pressure to accept. Nobody wants to plead guilty to a crime. And you do it of necessity because you get a better, you take a gamble, but you get what you think is a better disposition. Certainly, Your Honor. But when people do that, they need to waive the procedural protections that they are waiving by entering a plea in a knowing and voluntary fashion. And the district court never went through the things that Mr. Yeakam could have done to contest the forfeiture if he did not enter the plea, which does not ensure that that portion of the plea is knowing and voluntary. And, therefore, we would ask that the court find that that was. You ever see a case like that reversed? I have not, Your Honor. I looked and I could not find one. I just don't get it. Why are you arguing this thing? I mean, it's a good point, and your brief makes a good point of it, but I haven't seen a case like this right here on this point on waiver being reversed on this kind of a basis either. And I don't mind having a nice argument, but it seems to me the arguments that really you got a good hit at are the ones you would focus on. But if you want to continue, I mean, it's good, but I just haven't seen one. Well, now you're right. And I'm not saying we don't do stuff new every now and then, but it looks pretty clear to me. But it is new. I will give you that. And to be honest, it's raised because from the beginning he has said to counsel, I don't want to forfeit any of this stuff. I want to fight this. That's a lot of money. And obviously eventually he entered the plea. Well, look what he entered the plea to and what he could have been convicted of. He complained about it. He's making all this money. He says, I don't have anything left. Right. Of course, he had over $2 million that he had. That's correct. But if there aren't any further questions on that, Your Honor. Thank you. Thank you. All right. We'll come down and greet counsel and proceed on to the next case.
judges: Paul V. Niemeyer, Diana Gribbon Motz, James A. Wynn Jr.